# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. | CV 11-6434-GW(AJWx) |
| Title | *Fatemeh Johnmohammadi v. Bloomingdales, Inc., et al.* |
| Date | January 26, 2012 |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | Pat Cuneo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:  
Dennis F. Moss

Attorneys Present for Defendants:  
John Slade Curtis  
David E. Martin

**PROCEEDINGS:** DEFENDANT BLOOMINGDALE'S, INC.'S MOTION TO COMPEL PLAINTIFF TO ARBITRATION AND TO STAY CIVIL PROCEEDINGS (filed 11/30/11)

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, plaintiffs' supplemental brief will be filed and served by February 2, 2012. Supplemental response will be filed and served by February 16, 2012. Defendants' motion is continued to **February 23, 2012 at 8:30 a.m.**

: 15

Initials of Preparer   JG

<u>***Johnmohammadi v. Bloomingdale's, Inc.***</u>, Case No. CV-11-6434
Tentative ruling on Defendant Bloomingdale's, Inc.'s Motion to Compel Arbitration and to Stay Civil Proceedings

**I. Background**

Before the Court is defendant Bloomingdale's, Inc.'s ("Defendant") motion, pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, seeking an order from the Court: (1) compelling plaintiff Fatemeh Johnmohammadi ("Plaintiff") to binding arbitration in this matter; (2) dismissing her representative allegations; and (3) staying this action pending the outcome of arbitration.

Plaintiff originally brought this class action suit against Defendant in state court, asserting violations of various California wage and hour laws because of Defendant's purported failure to pay all overtime wages due and all final wages due upon separation of employment to Plaintiff and other similarly situated employees. Notice of Removal ("NOR"), Docket No. 1, Compl. Defendant timely removed the case to federal court on August 5, 2011, on the basis of diversity jurisdiction. 28 U.S.C. § 1332(d) (the 2005 Class Action Fairness Act).

Relevant to the instant motion, in 2003, Defendant's parent company - Macy's Inc. - implemented an internal dispute resolution program called Solutions InSTORE ("SIS Program"). Declaration of Robert Noeth ("Noeth Decl."), Docket No. 23, ¶ 4. The SIS Program is a four-step process, the final step consisting of binding arbitration administered by the American Arbitration Association. *Id.* ¶ 8-10. By accepting employment with Defendant, an employee agrees to be covered by the four-step SIS Program. *Id.* ¶ 8, Exh. A (Plan Document for SIS Program) at p. 5. But, an employee can choose to opt out of the step-four arbitration by submitting an opt-out form within thirty days of his or her hire date. *Id.* ¶¶ 8, 10-12, Exh. C (Opt-Out Form). Defendant represents that the SIS Program prohibits retaliation against employees who opt out of step-four arbitration. *Id.* ¶ 12. Moreover, an employee's decision to stay in or opt out of step-four arbitration is kept confidential, with limited exceptions. *Id.* ¶ 11. That is, no one in the employee's store or other work location has access to the employee's decision. Instead, only a select few employees located in Ohio have access to such employee information and only when such information is pertinent to handling an employee's claim. *Id.*

If an employee does not opt out of step four, the scope of arbitration is expansive. Under Article 2 of the Plan Document, final and binding arbitration exclusively covers the resolution of "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment." *Id.*, Exh. A at p. 5. However, certain claims are excepted from arbitration, including employee claims "that are required to be processed under a different procedure pursuant to the terms of an employee pension or benefit plan," as well as employee claims "for state employment insurance . . . or under the National Labor Relations Act." *Id.* at p. 6. Moreover, arbitration functions as a waiver of the employee's ability to engage in class representation because, under the SIS Program, the "Arbitrator shall not consolidate claims of different [employees] into one (1) proceeding, nor shall the Arbitrator have the power to hear an arbitration as a class action ([pointing out that] a class action involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the

-1-

group).") *Id*. Exh. A at p. 14 (Plan Document § 11(f)(ii)).

Plaintiff was hired as a sales associate by Defendant on November 10, 2005. *Id*. ¶ 15. Defendant represents that it takes numerous measures to ensure that newly hired employees receive detailed information about the SIS Program, including the terms of arbitration and the arbitration opt-out. *Id*. ¶ 16. Such measures include notice of the arbitration opt-out on the application of employment, information in an employee handbook, as well as the provision of a new hire brochure. *See, e.g., id*. ¶ 16; Declaration of Adrienne Tierney ("Tierney Decl."), Docket No. 24, ¶¶ 4-8. There is no dispute that Plaintiff failed to opt out of the step-four arbitration. Noeth Decl., ¶¶ 25-28; Declaration of David E. Martin ("Martin Decl."), Docket No. 25, ¶ 2 (Plaintiff Deposition at p. 195:2-4).

As a result of Plaintiff's failure to opt out of step-four arbitration, Defendant filed the instant motion to compel. In response to the motion, on December 21, 2011, Plaintiff filed an Unfair Labor Practices Charge against Defendant with the National Labor Relations Board ("NLRB"). Declaration of Dennis F. Moss ("Moss Decl."), Docket No. 28, ¶ 5, Exh. 2. In that NLRB filing, Plaintiff asserts that Defendant has violated Section 8(a)(1) of the National Labor Relations Act ("NLRA") by invoking the arbitration provision which precludes Plaintiff from proceeding with a class action because such a provision purportedly violates Plaintiff's rights under Section 7 of the NLRA to engage in "concerted activities for . . . the mutual aid and protection" of employees. *Id*. Plaintiff also filed an opposition to the instant motion to compel with this Court likewise arguing that the Court cannot enforce the arbitration agreement because it violates the NLRA.

**II. Analysis**

Congress enacted the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Under the FAA, arbitration is proper where there is a valid written agreement covering the party's asserted claims. 9 U.S.C. § 2. In particular, arbitration clauses are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. And, as no party appears to dispute, the FAA covers employment arbitration agreements, even when such agreements cover claims arising under state law. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that the FAA only exempts from its purview employment contracts of transportation workers). In addition, the Supreme Court has stated "that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Thus, in considering Defendant's motion to compel arbitration, this Court is tasked with evaluating whether the parties have entered into a valid and enforceable agreement to arbitrate and whether the agreement to arbitrate encompasses the underlying disputes alleged in Plaintiff's Complaint. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (2000); 9 U.S.C. § 2.

In its moving papers, Defendant raises the following arguments as to why this Court should enforce the arbitration agreement entered into between it and Plaintiff. First, to support its position that the arbitration agreement is valid and enforceable, Defendant contends that Plaintiff voluntarily accepted Defendant's offer to arbitrate through her failure to opt out of step

four of the SIS Program after being informed about the program's terms and that the resulting agreement is supported by sufficient consideration. Defendant also argues that the SIS Program contains sufficient safeguards to ensure that Plaintiff's claims are decided in a fair and efficient manner, including, among others: 1) the selection of a neutral arbitrator, 2) sufficient discovery, 3) a required written arbitrator award, 4) the provision of the same relief afforded by a court of law, and 5) minimal financial burden on the employee. Defendant likewise asserts that there is no basis to find the arbitration agreement either procedurally or substantively unconsionable. In addition, it argues that pursuant to, *inter alia, AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ("*Concepcion*"), the waiver of representative actions in the arbitration agreement is valid and enforceable. Finally, Defendant maintains that the claims set forth by Plaintiff's Complaint fall within the broad scope of the arbitration agreement, as quoted in this order's background section.

      Regarding its argument that the class action waiver provision of the arbitration agreement is enforceable (and in anticipation of what Defendant no doubt thought might be Plaintiff's primary argument against arbitration here), Defendant acknowledges that prior to *Concepcion*, the California Supreme Court refused to enforce representative action waivers in arbitration agreements. For example, in *Discover Bank v. Sup. Ct.*, 36 Cal. 4th 148 (2005), the California Supreme Court held that in certain specified circumstances, the waiver of class arbitration in a consumer contract of adhesion is unenforceable and that such a prohibition of class action waivers was not preempted by the FAA. *Id.* at 162-63, 165-66. Then, in *Gentry v. Sup. Ct.*, 42 Cal. 4th 443 (2007), the California Supreme Court, in heavy reliance on *Discover Bank*, ruled that class arbitration waivers in *employment* agreements also could not be enforced in circumstances where enforcement of the arbitration provision would effectively undermine an employee's ability to vindicate statutorily protected, unwaivable rights to collect overtime wages. *Id.* at 463; *see also id.* at 462 (though noting that the court "cannot say categorically that all class arbitration waivers in overtime cases are unenforceable"). The *Gentry* Court likewise found that its holding was not preempted by the FAA for the same reasons as stated in *Discover Bank*. *Id.* at 465.

      However, in *Concepcion*, the United States Supreme Court expressly held that the FAA preempts the California judicial rule set forth in *Discover Bank* that class arbitration waivers in consumer contracts are unconsionable. 131 S. Ct. at 1753. In so ruling, the Supreme Court reiterated that "[t]he 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Id.* at 1748 (citation omitted). Because *Discover Bank* essentially mandated the availability of class arbitration, even when not contracted for by the parties, the Court found its reasoning to be inconsistent with the FAA. *Id.* ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."). In particular, the Court reasoned that mandated class arbitration would undermine the facilitation of streamlined proceedings due to the inherent, added complexity created by class versus bilateral arbitration. *Id.* at 1750-51; *see id.* at 1751 ("[C]lass arbitration sacrifices the principal advantage of arbitration–its informality–and makes the process slower, more costly, and more likely to generate procedural morass than final judgment."). Relatedly, the *Concepcion* Court also rejected any argument that "class proceedings are necessary to prosecute small-dollar claims that

otherwise might slip through the legal system[,]" explaining that "states cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753. Thus, *Concepcion* held that class action waivers in arbitration agreements can be enforceable. Defendant points out that, in reliance on *Concepcion*, a number of federal district courts within California have likewise held that *Gentry* is preempted by the FAA because it is a mere extension of *Discover Bank*, thereby finding representative waivers in employment arbitration agreements enforceable. *See, e.g., Lewis v. UBS Fin. Servs.*, No. 10-04867, 2011 U.S. Dist. LEXIS 116433, *14-15 (N.D. Cal. Sept. 30, 2011) (reviewing California federal district court cases and finding that "*Concepcion* effectively overrules *Gentry*."); *Valle v. Lowe's HIW, Inc.*, No. 11-1489, 2011 U.S. Dist. LEXIS 93639, *16-17 (N.D. Cal. Aug. 22, 2011) (concluding that "in light of *Concepcion*, *Gentry* is no longer good law"); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1127, 1135-40 (C.D. Cal. June 16, 2011) (Fees, J.) (in finding enforceable the same arbitration agreement at issue here, noting that *Concepcion* "undercut" the reasoning in both *Discover Bank* and *Gentry*; otherwise rejecting argument that agreement was unenforceable for being unconscionable)

  Seemingly throwing Defendant a curve ball, Plaintiff does not attempt to rely on *Gentry* at all to argue that the class action waiver in the instant employment arbitration agreement is unenforceable. Instead, Plaintiff argues that the waiver of class representation renders the arbitration agreement unenforceable because such a provision operates in derogation of an employee's protected rights under the NLRA. Therefore, the contract provision is "illegal" per se and unenforceable.

  More specifically, under Section 7 of the NLRA, "[e]mployees shall have the right to self-organization, to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and ***to engage in other concerted activities for the purpose of*** collective bargaining or ***other mutual aid or protection* . . . .**" 29 U.S.C. § 157 (emphasis added). In turn, Section 8(a)(1) of the NLRA makes it an unfair labor practice for any employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1). Plaintiff argues that the ability to engage in class representation to pursue her wage and hour claims is a protected "concerted activit[y] for the purpose of . . . mutual aid and protection," and therefore any waiver of that right through an arbitration agreement is necessarily unenforceable.

  In seeming acknowledgment that few federal courts have addressed this issue, Plaintiff's primary on-point authority for her position comes from a recent NLRB decision, *D.R. Horton and Michael Cuda*, NLRB Case No. 12-CA-25764, dated January 3, 2012, (hereinafter "*D.R. Horton*") (*see* Docket No. 29), as well as a collection of NLRB cases generally suggesting that class actions are a form of protected "concerted activities" under the NLRA. Defendant responds that the few federal district courts who have addressed whether representative action waivers run afoul of the NLRA have resolved the issue in the negative. It also posits that the factual circumstances of the representative action waiver here are distinguishable from those addressed in *D.R. Horton*, and therefore that case does not suggest that this Court should find the arbitration provision unenforceable. It otherwise argues that *D.R. Horton*, as an NLRB decision, is not entitled to deference from this Court.

  For the reasons that follow, the Court tends to agree with Defendant's positions, at least

in part, and is inclined to still find the arbitration agreement between the parties enforceable in full, notwithstanding Plaintiff's arguments in reliance on, *inter alia*, *D.R. Horton*. To begin, in *D. R. Horton*, the NLRB considered "whether an employer violates Section 8(a)(1) of the [NLRA] when it requires employees covered by the Act , *as a condition of their employment*, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours or other working conditions against the employer in any forum, arbitral or judicial [,]" and found "that such an agreement unlawfully restricts employees' Section 7 right to engage in concerted action for mutual aid or protection, notwithstanding the [FAA], which generally makes employment-related arbitration agreement judicially enforceable." *Id.* at 1 (emphasis added).

However, of particular concern for the NLRB in *D.R. Horton* was the fact that the waiver of class representation was *compelled* by the employer as a condition of employment. That is, the NLRB concluded that an employer cannot force an employee to waive what the NLRB considers to be a "substantive" right to engage in concerted activities, especially because the waiver functioned to preclude "concerted activities" in the form of class representation in *any* forum, court or arbitral. As a result, the NLRB concluded that its ruling was not in conflict with the broad federal policy in support of arbitration under the FAA because the FAA is not meant to do away with or disturb substantive rights, but only means to allow for such substantive rights to be subject to arbitration. *Id.* at 11. *But*, because of the particular factual scenario faced by the NLRB, it expressly limited the reach of its decision: "[W]e do not reach the more difficult question[] of . . . whether, if arbitration is a mutually beneficial means of dispute resolution, an employer can enter into an agreement *that is not a condition of employment* with an individual employee to resolve either a particular dispute or *all potential employment disputes through non-class arbitration* rather than litigation in court." *Id.* at 13 n.28 (emphasis added). In addition, the NLRB also recognized that, in certain circumstances, an employee can voluntarily waive its otherwise-protected, substantive Section 7 rights. *Id.* at 10 (citing to United States Supreme Court decisions and pointing out that the Section 7 right to strike, for example, can be waived by union representing employee in exchange for concessions from employer). That is, the NLRB at least acknowledges that Section 7 rights are not categorically un-waivable.

This Court need not agree or disagree with Plaintiff that "concerted activity" under the NLRA would capture class actions in pursuit of wage and hour labor rights. In light of the broad federal policy in support of enforcing arbitration agreements according to their terms and the caveats identified by the NLRB in *D.R. Horton* - specifically that that decision dealt with compelled arbitration, as well as the express and implied recognition by the NLRB that Section 7 rights can be waived voluntarily - this Court would find that a *voluntary* waiver of class representation in an employee arbitration agreement where the waiver does not function as a condition of employment would not run afoul of the NLRA. Indeed, at least one federal district court has reached a similar conclusion on similar facts, as acknowledged by *D.R. Horton*. *Id.* at 8 n.18. In *Webster v. Perales*, No. 07-00919, 2008 U.S. Dist. LEXIS 7503 (N.D. Tex. Feb 1, 2008), the employer required its employees to sign a waiver and arbitration agreement not as a condition of employment but in order to participate in an employee injury benefit plan. *Id.* at *4. The employees challenged the plan as violative of the NLRA because the arbitration waiver essentially precluded them from pursuing an FLSA collective action in court. First, the court

reasoned that there was no violation of Section 7 because the employees could still receive arbitration of their FLSA underlying substantive claims. *Id.* \*8-10. But, particularly instructive for this Court, the *Webster* Court went on to note that the employees could not establish a violation of Section 8(a)(1) for unfair labor practices because they "expressly acknowledged that their agreement to arbitrate was made voluntarily and without duress, pressure, or coercion. *In the absence of specific allegations of unfair labor practices*, [plaintiff-employees could not] establish that enforcement of the arbitration provision would violate Section 7 or Section 8(a)(1) of the NLRA." *Id.* at \*12. In addition, the *Webster* Court pointed out that the Supreme Court has never ruled that an employee cannot voluntarily waive his or her Section 7 rights. *Id.* at \*12-13 (emphasis added).[1]

      Again, Section 8(a)(1) of the NLRA makes it an unfair labor practice for any employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]." 29 U.S.C. § 158(a)(1). Here, too, as in *Webster*, the Court would find that because there is an absence of specific allegations of unfair labor practices, Plaintiff cannot establish that enforcement of the representative waiver in her case would violate her Section 7 rights. That is, Plaintiff makes no argument that she was coerced into entering the arbitration agreement or that her acceptance of it and its terms was anything other than voluntary and knowing. In other words, she presents virtually no facts countering the facts presented by Defendant suggesting that she was fully informed about the terms of the arbitration agreement and arbitration opt-out, that she nonetheless decided to voluntarily participate in the arbitration program, and that there were no threats of possible termination or other retaliation for failing to participate in arbitration. Nor does she present any legal argument suggesting that an employee could never voluntarily and consciously agree to waive his or her Section 7 rights to engage in "concerted activity," here in the form of a representative action. Without at least some facts or argument suggesting that the agreement to arbitrate did not actually function in a voluntary manner, the Court would be hesitant to find it unenforceable as evidencing an unfair labor practice on the part of Defendant, especially in light of the broad federal policy in favor of enforcing arbitration agreements according to their terms as reinforced by *Concepcion*.

      The Court might have reached a different result if Plaintiff presented some compelling argument that, even though the arbitration agreement was *facially* presented as voluntary, it operated through compulsion by the employer and was not actually presented in an understandable fashion to Plaintiff, making this case more in line with *D.R. Horton*. But, as Defendant repeatedly points out, Plaintiff presents no facts or argument expressly stating (or even implying) that she did not understand the terms of the arbitration agreement or what she was getting in to and giving up by not opting out of arbitration. Nor does she present any factual or

---

[1] In the two district court decisions that Defendant cites to in which the courts found a representative action waiver did not violate the NLRA, those courts take an extremely narrow view of the meaning of "concerted activities" under Section 7 as only capturing collective bargaining activities. *Grabowski v. C.H Robinson Co.*, No. 10-1658, 2011 U.S. Dist. LEXIS 105680, \*18-20 (S.D. Cal. Sept. 19, 2011); *Slawienksi v. Nephron Pharm. Corp.*, No. 10-0460, 2010 U.S. Dist. LEXIS 130365, \*5-7 (N.D. Ga. Dec. 9, 2010). This Court does not take a position as to whether those courts are correct or incorrect in their interpretations.

legal argument specific to the arbitration agreement she entered in to with Defendant that suggests she cannot otherwise adequately pursue her specific California wage and hour claims against Defendant through individual arbitration. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."). Instead, she relies on a categorical position that an employee could *never* opt out of representative action through mutually agreed upon, voluntary individual arbitration, a broad position this Court would not adopt. For those reasons, the Court would find the voluntary representative action waiver enforceable herein.

The Court notes that in asking this Court to find the arbitration agreement unenforceable because it purportedly violates the NLRA, Plaintiff asserts that the "primary jurisdiction" of the NLRB to rule upon affirmative claims of unfair labor practices is not jeopardized. "'The doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the [NLRB].'" *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1156 (9th Cir. 2000) (citation omitted). However, this primary jurisdiction doctrine has certain exceptions, and Plaintiff points the Court to a First Circuit decision, in which the court stated:

> It is, of course, the [NLRB], not the courts, which has primary jurisdiction to determine what is and is not an unfair labor practice, and to provide affirmative remedies. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959). Nonetheless, as the federal courts may not enforce a contract provision that violates section 8 of the [NLRA], they may be obliged at times, in the course of resolving a contract dispute, to decide whether or not such a violation exists. *See Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 86 (1982).

*Courier-Citizen Co. v. Boston Electrotypers Union No. 11, Int'l Printing & Graphis Commc'ns Union of N. Am.*, 702 F.2d 273, 277 n.6 (1st Cir. 1983) (finding that contract provision did not violate Section 8 of the NLRA); *see also Kaiser Steel Corp.*, 455 U.S. at 86 ("While only the [NLRB] may provide affirmative remedies for unfair labor practices, a court may not enforce a contract provision which violates [the NLRA]. Were the rule otherwise, parties could be compelled to comply with contract clauses, the lawfulness which would be insulated from review by any court."). Thus, because this Court cannot enforce illegal contract provisions and the allegations of illegality center on whether Defendant violated the NLRA, Plaintiff posits that the Court is well within its authority to determine whether Defendant has violated Section 7 and 8(a)(1) of the NLRA. While the Court tends to agree with Plaintiff that in the present procedural and factual scenario, *i.e.*, on a motion to compel arbitration, the Court is well within its authority to evaluate whether the arbitration agreement violates the NLRA, the Court also recognizes that Plaintiff here has simultaneously raised with the NLRB, as of December 21, 2011, the illegality of the representative action waiver in the arbitration agreement. Thus, the Court would address with the parties at the hearing how the filing of the NLRB charge by Plaintiff, admittedly after the institution of this lawsuit, should affect the ruling on the instant motion to compel arbitration, if at all. That is, while under *Kaiser* this Court needs to reach whether the representative waiver violates the NLRA and seemingly can without waiting on such a pronouncement from the NLRB, the Court is cognizant of the fact that the NLRB could reach a different result here than the Court. With the possibility of competing substantive law determinations, the Court would be

concerned about the possible imposition of conflicting obligations and remedies placed on the parties. Thus, the parties need to address with the Court with more detail if the filing of the NLRB charge by Plaintiff should in any way make a difference to the outcome of the present motion. Defendant does not even refer to the NLRB filing in its reply, and Plaintiff does not acknowledge the possibility of competing substantive law obligations arising in this matter because of her confidence that the Court will resolve the motion to compel in her favor.

The Court would also address with Defendant why it is seeking only a stay of this matter rather than an outright dismissal of the case. Article 3 of the Plan Document states that "[i]f a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall *dismiss* the lawsuit and require the claim to be resolved through the [SIS Program]." Noeth Decl., Exh. A at p. 7 (emphasis added). A stay is only contemplated where some of the claims in the lawsuit are nonarbitrable, and therefore the court should stay the litigation while the arbitrable claims proceed to arbitration. *Id.* Here, while the parties dispute the enforceability of the arbitration agreement, there appears to be no dispute that all of Plaintiff's claims against Defendant otherwise fall without the scope of that arbitration agreement if it is enforceable. Therefore, Defendant should explain why a stay is appropriate here. The Court recognizes that the FAA contemplates a stay of civil proceedings while a matter is referred to arbitration, 9 U.S.C. § 3, but the Court would inquire of the parties whether the Court would not be well within its discretion to simply dismiss this action. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (while FAA authorizes court to stay case pending arbitration, it does not "limit the court's authority to grant dismissal" of case where plaintiff required "to submit all claims to arbitration.").

### III. Conclusion

For the foregoing reasons, the Court would grant Defendant's motion to compel arbitration of Plaintiff's claims. But, prior to granting the motion, the Court would address with the parties at the hearing: (1) whether the existence of Plaintiff's currently pending claim with the NLRB also centering on the enforceability of the representative action waiver in the parties' arbitration agreement should or would affect the Court's ruling on the instant motion; and (2) whether this case should be fully dismissed rather than stayed in light of the Court's grant of the motion to compel.