```
 1              UNITED STATES DISTRICT COURT

 2             CENTRAL DISTRICT OF CALIFORNIA

 3                    WESTERN DIVISION

 4        THE HONORABLE GEORGE H. WU, JUDGE PRESIDING

 5

 6   FATEMEH JOHNMOHAMMADI,            )
                                       )
 7              Plaintiff,             )
                                       )
 8                                     )
          vs.                          )   No. CV 11-6434-GW-AJW
 9                                     )
     BLOOMINGDALE'S, INC., et al.,     )
10                                     )
                Defendants.            )
11   _____)

12

13

14

15        REPORTER'S TRANSCRIPT OF PROCEEDINGS

16

17              Los Angeles, California

18        Thursday, January 26, 2012, 9:27 A.M.

19   DEFENDANT'S MOTION TO COMPEL ARBITRATION & STAY PROCEEDINGS

20

21                            PAT CUNEO CSR 1600, CRR-CM
                              Official Reporter
22                            Roybal Federal Building
                              Room 181-E
23                            255 East Temple Street
                              Los Angeles, California 90012
24                            (213) 617-1817
                              grammacuneo@aol.com
25
```

*Pat Cuneo, Official Reporter*

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:    SPIRO MOSS LLP
                            BY:  DENNIS F. MOSS, ATTORNEY AT LAW
 3                          11377 West Olympic Boulevard
                            Fifth Floor
 4                          Los Angeles, California  90064-1683
                            (310) 235-2468
 5                          dennisfmoss@yahoo.com

 6
      FOR THE DEFENDANTS:   LAW OFFICES OF JULIA AZRAEL
 7                          BY:  JOHN S. CURTIS, ATTORNEY AT LAW
                            5200 Lankershim Boulevard
 8                          Suite 850
                            North Hollywood, California  91601
 9                          (818) 766-5177
                            jcurtis@azraellaw.net
10

11    FOR THE DEFENDANTS:   MACY'S LAW DEPARTMENT
                            BY:  DAVID E. MARTIN, ATTORNEY AT LAW
12                          611 Olive Street
                            St. Louis, Missouri  63101
13                          (314) 342-6719
                            david.e.martin@macys.com
14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   LOS ANGELES, CALIF.; THURSDAY, JANUARY 26, 2012; 9:27 A.M.
 2                              -oOo-
 3            THE COURT:  Let me call the matter of
 4   Johnmohammadi.  When you have all these letters in the last
 5   names, it's hard for me to do it.
 6            MR. MOSS:  Good morning, Your Honor.  Dennis Moss
 7   appearing on behalf of plaintiff.
 8            THE COURT:  All right.
 9            MR. MOSS:  And I have a blue binder.
10            THE COURT:  All right.  I thought we were going to
11   a paperless society.
12            MR. MOSS:  I just thought it complimented the
13   white and black one from the last one.
14            THE COURT:  Okay.  So it's neither good nor bad.
15            MR. CURTIS:  Good morning, Your Honor.  I'm
16   John Curtis appearing for the defendant Bloomingdale's.
17            THE COURT:  All right.
18            MR. CURTIS:  I have with me Mr. Martin who is also
19   representing Bloomingdale's.
20            THE COURT:  All right.
21            We're here on this motion to compel arbitration,
22   to stay.  I've issued a tentative on this.  I presume both
23   sides have seen it.
24            MR. MOSS:  Yes, Your Honor.
25            MR. CURTIS:  Yes, Your Honor.
```

```
 1              THE COURT:  Somebody want to argue anything or do
 2   you want to submit?
 3              MR. MOSS:  The binder didn't turn blue until I
 4   read the tentative.
 5              THE COURT:  Okay.
 6              MR. MOSS:  On behalf of the plaintiff, there are
 7   several points I'd like to make.  The right to engage in
 8   concerted activities is a substantive right.
 9              Let's assume, if you will, that the contract to
10   arbitrate was in exchange for a promise that you won't join
11   a union.
12              THE COURT:  Well, no.  That wouldn't be quite
13   analogous to what we have here.
14              MR. MOSS:  Well, I think the reason it is is
15   because the courts have recognized that participating in a
16   class action is a form of concerted activity just as joining
17   a union is a form of concerted activity.
18              THE COURT:  Some courts have held that, some
19   courts have held not.  So it's not -- and, also, I would say
20   that no court that's binding on this court has determined
21   one way or the other.
22              MR. MOSS:  Well, I think if you go back to the --
23   there were cases that, the old cases, *National Licorice*
24   *Company* and the --
25              THE COURT:  The operative word, however, being
```

1  "old cases."
2         MR. MOSS:  Well, but the United States Supreme
3  Court cases, the *East Text* case is, I think -- I haven't
4  looked at it before I came here today; but the East Text
5  case was a United States Supreme Court case that said that
6  engaging in collective litigation is a form of concerted
7  activity and --
8         THE COURT:  Well, but let me just stop you.  You
9  can waive the right to strike; and if you can waive the
10 right to strike, you can waive the right to participate in
11 group litigation.
12        I mean, what's the difference?
13        MR. MOSS:  Well, the difference is --
14        THE COURT:  In other words, it's more important to
15 engage in group litigation than it is to strike?
16        MR. MOSS:  Well, you can't waive the right to join
17 a labor organization.  The only --
18        THE COURT:  But we're not talking about that here.
19 Nobody is saying that somebody was somehow barred or, you
20 know, et cetera, from joining a union.
21        MR. MOSS:  I understand that.  But that's a form
22 of concerted activity.  The only place the right to strike
23 is waived is in the exercise of concerted activity.
24        It's when emply -- and that makes it distinct.
25 It's when employees join a union and they collectively

1   bargain that the right to strike -- they can waive the right
2   to strike.
3           So that waiver is -- comes from the exercise of
4   concerted activity.  Here, the waiver was a condition of
5   getting this arbitration clause.
6           And let's say they said to the employee:  We'll
7   give you extra money not to engage in -- it's a species of
8   yellow dog contract.
9           You cannot engage in a concerted activity of
10  joining together.  Joining together like joining a union is
11  different than a right to strike.  They are tantamount to
12  each other.
13          But -- and the *East Text* case clearly makes clear
14  that litigation, collective litigation, in the United States
15  Supreme Court case, is a form of concerted activity.
16          The issue -- the court references, I think it's
17  footnote 28.  But before you get to footnote 28, on pages --
18  I think it's 4, 5, and 6 of the *D.H. Horton* decision.
19          They talk about the giving up -- that the right to
20  engage in concerted activity arises under public policy; and
21  you cannot -- you cannot have a contract that controverts
22  that public policy; and they cite the *JIK* case and the *J.H.*
23  *Stone & Sons* cases.
24          And they said in the *J.H. Stone* case -- and this
25  is from the *D.H. Horton* decision -- the Seventh Circuit

1   affirmed the board's holding described in the contract
2   clause as a *per se* violation of the act even if entered into
3   without coercion.
4           So you don't need coercion in order to have a void
5   contract provision that denies concerted activity.
6           THE COURT:  Let me stop you.  We're not even
7   talking about that here.  In other words, we're talking
8   about an arbitration situation.  You're talking not about
9   litigation, normal litigation.  We're talking about
10  arbitration and the limitation insofar as arbitration is
11  concerned of not allowing for class arbitration.
12          So it's a step away from, a step away from, a step
13  away from, a step away from, a step away from so you're
14  really outside the entire premises at this point in time.
15          MR. MOSS:  Well, but the courts have recognized
16  that arbitration is tantamount to being in court so the
17  question is --
18          THE COURT:  Oh, actually, the courts have
19  recognized that arbitration is distinct from being in court.
20  In fact, the whole point of arbitration is to not be in
21  court.
22          MR. MOSS:  No, but you can litigate -- you're not
23  depriving somebody of due process rights, for example, by
24  having a litigation before a neutral arbitrator.
25          And whether it's a class action in court or a

```
 1   class action in arbitration, a class arbitration, they
 2   invoke concerted activity, both involved concerted activity.
 3           THE COURT:  No, let me just stop you.  I
 4   understand your argument.  I just don't buy it.
 5           MR. MOSS:  Well, let me address the further
 6   argument and, that is, the court's suggestion that the -- in
 7   connection with primary jurisdiction of the NLRB.
 8           There is an unfair labor practice charge
 9   specifically arising from the conduct of conditioning this
10   arbitration right on waiving rights to engage in concerted
11   activity.
12           That is pending before the National Labor
13   Relations Board.  In D.H. Horton, in footnote 28, they say:
14   We haven't decided that yet.  It's definitely something
15   they're going to have to decide.
16           THE COURT:  Let me stop you. I agree with that
17   argument.  It seems to me that is a point that I have to
18   consider and that is the point that I was going to be
19   addressing with the defendants.
20           So you don't really need to make the point at this
21   point time.  You can just simply respond to their point.
22   Because I do agree with you.  If, in fact, the NLRB is
23   considering this issue, you know, why shouldn't I wait until
24   I see what the NLRB does.
25           MR. MOSS:  And just from the plaintiff's
```

```
 1   perspective, we would have no problem with that.
 2              THE COURT:  I understand that.
 3              MR. MOSS:  Okay; thank you, Your Honor.
 4              THE COURT:  That's why it's blue because it's
 5   neither white nor black.
 6              Let me hear from the defense.
 7              MR. MARTIN:  Good morning, Your Honor.
 8   David Martin on behalf of Bloomingdale's.  The two issues
 9   are, as you point out in the tentative, Your Honor, you have
10   the -- you can determine whether the contract is legal or
11   illegal; and you've determined that it is legal and that
12   Horton doesn't apply.
13              THE COURT:  I think the only thing I said is it's
14   not illegal.
15              MR. CURTIS:  Not illegal.
16              And that Horton doesn't supply; and I think once
17   you have reached that conclusion that Concepcion is
18   absolutely and abundantly clear; that there is -- that it
19   compels that the arbitration agreement be enforced.
20              THE COURT:  Well, let me just put it this way.
21   The only reason that I -- I don't really decide the
22   underlying issue of Horton.
23              I basically say that this situation that we have
24   here is different than Horton because of the voluntary
25   agreement by employees that is described in the papers,
```

1  et cetera.
2              So, therefore, I don't need to decide if *Horton*
3  was right or wrong or am I bound by *Horton* or not.  I'm
4  saying no matter how you slice it or dice it, this case is
5  different from *Horton* and, therefore, in light of this case,
6  I find that the law is more consistent with the view that
7  there can be a waiver of the right to have a class action
8  arbitration or class arbitration.
9              MR. MARTIN:  The point I was trying to make, Your
10 Honor, was simply that *Concepcion* says that if you have a
11 valid arbitration agreement, it should be compelled and
12 enforced; and in that situation, there's no reason to delay
13 the proceedings.
14             THE COURT:  But let me ask you.  Is the defendant
15 conceding that the issue as to whether or not the defendant
16 employer is engaging in an unfair labor practice by doing
17 this, why wouldn't I wait and see whether and what happens
18 just as -- because, you know, why would I be compelling or
19 is it a situation where if I were to compel, in other words,
20 I would basically be compelling the plaintiffs, based upon
21 something that may turn out to be held to be an unfair labor
22 practice, which seems to me to be somewhat inconsistent.
23             MR. MARTIN:  Let me go back for a little bit about
24 where we are right now on the NLRB front.  Yes, plaintiffs
25 have filed an unfair labor practice charge.

1              There has been no Complaint, no decision to file a
2  Complaint against the company.  It is in the very nascent
3  stages.  In fact, Bloomingdale's position statement is due
4  tomorrow.
5              Assuming, after they review a position statement,
6  that they are going to file a formal Complaint against the
7  company --
8              THE COURT:  Let me stop you.  Would you -- both
9  sides, I think, would have to agree that this particular
10 aspect is not really well-fleshed out in the materials that
11 you've given me so far.
12             Because, in other words, nobody particularly said,
13 you know, how this thing is going to proceed or would
14 proceed in front of the NLRB.  In other words, is it a
15 situation where the NLRB may be coming down with a decision
16 fairly quickly or is it going to be a situation where it
17 will languish in front of the NLRB for years.
18             If it's going to languish in front of the NLRB for
19 years, I'm not inclined to stay.  But if it's a situation
20 where, based on the record of the NLRB -- but, frankly, as
21 an aside, I think I understand what the record is in front
22 of the NLRB and the problems the NLRB has had, you know, in
23 its composition, et cetera, et cetera.
24             So I'm not necessarily expecting anything to come
25 out really quickly.  But if there is some evidence that

```
 1   something fairly quickly can happen, I'm willing to stay.
 2             MR. MARTIN:  Your Honor, as I understand it and as
 3   I told my client is that there has been no Complaint filed
 4   and that it could take an exceptionally long time.
 5             I also understand, Your Honor --
 6             THE COURT:  Okay.  But let me just stop.  That
 7   stuff hasn't been presented to me by both sides and I want
 8   it presented to me by both sides.
 9             If in the end of this hearing it's going to come
10   down to:  Well, let's see what the NLRB does or the argument
11   is that we should wait or we shouldn't wait.
12             I don't feel comfortable with what you guys have
13   given me so far to make that decision, but I would make the
14   decision once I got the input from both sides.
15             MR. MOSS:  Well, Your Honor, do you want us to
16   write you with that information?
17             THE COURT:  Yes.  In other words, I don't usually
18   don't like the oral stuff because I forget everything that
19   you guys say to me, you know, like three seconds after I've
20   heard it.
21             MR. MOSS:  Well, procedurally --
22             THE COURT:  Well, but procedurally let me just ask
23   you this.  Is that the only real issue at this point in time
24   given the fact I have already indicated in my tentative how
25   I view the *Horton* issue, you know, I think I pretty much
```

1  made myself clear on that; and on that, I'm willing to make
2  a decision on now.
3          MR. MARTIN:  Yeah.  And just to be clear you also
4  raised in your tentative the issue about dismissal an as
5  opposed to stay.
6          THE COURT:  Yes.
7          MR. MARTIN:  The defendant would have no problem.
8  I think it's well within your discretion to do either --
9          *(Counsel overtalking; not reported.)*
10         THE COURT:  But, obviously, if I did a dismissal
11 in lieu of stay, then it would be with the understanding
12 that the defendant would be waiving any statute of
13 limitations arguments and things of that sort.
14         MR. MARTIN:  That's fine.
15         THE COURT:  Okay.
16         MR. MOSS:  Well, I think -- I think what we should
17 do at this point is submit something in writing describing
18 what the NLRB'S procedures are because there's a -- I'll be
19 very short on this.
20         But there's a process where they've taken my
21 charge, they've taken an affidavit from my client, they've
22 taken a position from us, they do that from the other side,
23 and usually it's a fairly short period of time they decide
24 to issue a Complaint.
25         And that decision is a decision by the regional

1   office that it presumptively has merit and that they issue a
2   Complaint.  They actually represent the party.
3           THE COURT:  Sure.  Let me also ask you this
4   question.  Will they accept or consider, for example, the
5   fact that there is a litigation that involves this matter
6   and, therefore, that they should perhaps be moving with a
7   little bit more speed if they can on the particular matter?
8           Or is it a situation where they're going to ignore
9   the fact there's a -- in fact, may consider the fact that
10  there is a pending litigation as a reason for them not to
11  move fast on that request.
12          MR. MOSS:  In the charge, we pointed out to them
13  that the charge arises from them raising the affirmative
14  defense in litigation.
15          And so the court -- the NLRB has all the
16  information regarding the -- they have the Complaint, they
17  have the Answer with the affirmative defense.  We even gave
18  them the motion papers showing that their defense relates to
19  the concerted activity issue.
20          But my experience is that they will rule on
21  whether to issue a Complaint within the next several months;
22  and perhaps what we do is wait and maybe come back in a
23  couple of months.
24          And if they haven't ruled yet, then you might
25  change your position.

```
 1              THE COURT:  Well, what I want first of all,
 2   however, is just a little bit further explanation from both
 3   sides as to this NLRB issue so that I can understand better
 4   because, I obviously -- well, actually I did a little bit of
 5   NLRB law in '75, not much since then and I think things have
 6   changed so when can you --
 7              MR. MOSS:  Unfortunately, they haven't changed
 8   that much.
 9              THE COURT:  And certainly not for the better in
10   your view.
11              Let me just ask.  I presume since the plaintiff is
12   going to be making the contention, when do you think you can
13   give me something and then I'll give the defense a chance to
14   respond?  And, again, obviously, there obviously is no major
15   rush at this point in time so whatever --
16              (Counsel overtalking; not reported.)
17              MR. MOSS:  Well, in terms of the -- just explain
18   the procedure to the court of the NLRB.
19              THE COURT:  Yes.
20              MR. MOSS:  I can get you something by --
21              THE COURT:  And basic pitching the argument as to
22   why I should stay, you know, based upon that.
23              MR. MOSS:  Umm, I can get you that in two weeks.
24              THE COURT:  Sure; okay.  Two weeks would be by the
25   $2^{nd}$ of February; and how long will it take the defense --
```

```
 1   and obviously serve the defense on that date, too.
 2              How long is it going to take the defense to give
 3   me a response?
 4              MR. MARTIN:  Two weeks.
 5              THE COURT:  Two weeks?  Okay.  So then by the
 6   16th.  I'll have you guys back here on the 23rd.
 7              (Court and the clerk conferred.)
 8              THE COURT:  2nd and 16th and give me a
 9   courtesy copy on the 16th.  Then I'll have you guys back
10   here on the 23rd.  All right?
11              MR. MOSS:  Okay.  Thank you, Your Honor.
12              THE COURT:  Thank you.
13              MR. MARTIN:  Thank you.
14              THE COURT:  Have a nice day.
15              MR. MARTIN:  That's at 8:30, Your Honor?
16              THE COURT:  8:30, yes.
17              (At 9:42 a.m. proceedings were concluded.)
18
19                            -oOo-
20
21
22
23
24
25
```

```
 1                          CERTIFICATE

 2

 3         I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9
     Date:   February 2, 2012
10

11

12

13

14                             /s/   PAT CUNEO_____

15                             OFFICIAL COURT REPORTER
                               CSR NO. 1600
16

17

18

19

20

21

22

23

24

25
```